EBENEZER W. ELDER *versus* SAMUEL LARRABEE.

As a general rule, one part owner of a vessel is the agent for the other part owners, and, in all that concerns the business and employment of the vessel, may bind them for necessary supplies and repairs.

But the authority of one part owner so to bind the others, though ordinarily implied from their community of interest, and the relations which they sustain to each, is not conclusively to be presumed from these facts, but it is subject to be modified, controlled or negatived by other facts and circumstances.

Though repairs in a given case are necessary, and are made by order of one of the part owners, and the others give no notice of dissent to the person making the repairs, it does not follow conclusively as a matter of law, that they are all liable therefor.

When such repairs are made in the home port, and the person making them by order of one part owner, knows who the other owners are, and, having opportunity to consult them, neglects to do so, unless he can show that they all assented to the repairs, he should be presumed to have made them on the credit of those, only, who employed him ; and his remedy is against them alone, or against the vessel itself, by proceedings *in rem.*

EXCEPTIONS to the ruling of APPLETON, J.

This was ASSUMPSIT against the defendant as a part owner of the schoner Regulator, for materials furnished for repairs. The facts are fully stated in the opinion of the Court.

*Ingersol,* for the plaintiff.

*F. A. Wilson,* for the defendant.

The opinion of the Court was drawn up by

RICE, J.—Assumpsit for the price of a sail furnished for the schooner Regulator. In 1856, as appears from the evidence in the case, the plaintiff and defendant were owners of the schooner Regulator, each owning one-half thereof. By arrangement between them, in the spring of that year, the management of the schooner was entrusted to the defendant, who caused her to be repaired, paying the bills from the earnings of the vessel. In the spring of 1857, she was again repaired by the defendant, who appointed Capt. Green master, and sent her to sea. June 8, 1857, the plaintiff conveyed his half of the schooner to Laforrest Cushing, who immediately afterwards went to Boston, where the schooner then was, and induced Green to surrender the command of her to him, after which he took the oath required by law, as master, and returned with the schooner to Bangor. On the day of his arrival at Bangor, he called on the defendant, who resided in that city, and inquired of him what he should do with the schooner. Defendant said, " do nothing." Whereupon Cushing told him, " help yourself if you can — I own half of her." After some further conversation, in which the defendant manifested a determination to prevent Cushing from having the control of the schooner, they separated. Soon after this, the

bill for which this action has been brought, was incurred by Cushing.

The jury, under instructions from the Court, returned a general verdict for the plaintiff, and also found specially, that the repairs were necessary; that they were made upon the credit of the vessel and owners, and that the defendant did not notify the plaintiff before the repairs were made that he would not be accountable for them.

The presiding Judge was requested, by the defendant's counsel, to instruct the jury that said Cushing was not legally master under the above state of facts, to order repairs or to bind the owners therefor.

This request was refused as is now contended erroneously.

The repairs were made in a home port, and the plaintiff now claims to recover on the ground that they were ordered by Cushing, not as master or ship's husband, but as part owner. The question, therefore, whether Cushing was or was not legally master is unimportant, as it is not denied that he was at the time part owner.

Had he authority, under the circumstances, as part owner, to render the defendant or co-owner liable for the repairs in question?

In general all the part owners are liable each for the whole amount, for all the repairs of a ship, or for necessaries actually supplied to her in good faith. Parson's Mercantile Law, 335.

In all that concerns the repairs and necessaries of the ship, one part-owner is the agent for the other part-owners. Collyer on Part. § 1226; and may bind his fellows for repairs and necessaries. Ib. § 1218.

Part owners of ships are tenants in common holding distinct but undivided interests; and each is deemed the agent of the others as to the ordinary repairs, employment and business of the ship in the absence of any known dissent. Story's Agency, § 40; each being liable for the whole *in solido.* Ib. § 419.

With regard to the repairs of a ship, and the necessaries for the employment of it, one part owner may, by ordering those things on credit, render his companions liable to be sued for the price of them, unless their liability be expressly provided against.   Abbott on Shipping, § 105.

Such is the general authority which, at the common law, one part owner has to bind his co-owners for the necessaries and repairs required for the employment of the ship.   This authority arises from an implied agency on the part of one part owner to act for the rest.   The implication of agency arises from the fact that, ordinarily, public policy, as well as the interest of the owners, requires that ships should be employed, this species of property having been "originally invented for use and profit, not for pleasure or delight; to plow the sea, not to lie by the walls."

But, in this case, the question whether there be no qualification or limitation to these general principles becomes important and pertinent.   Because, if there be no qualification or limitation, the result must follow that one part owner may be placed wholly at the mercy of each and all of his co-owners, and that, so long as he retains any interest in a ship, he may be rendered liable for necessary repairs, against his will and protestation, to an indefinite amount.   Such absolute and unqualified authority in one person to bind another, under all circumstances, or his agent, would be not only anomalous, but highly dangerous.   It does not exist.   The authority of one part owner to bind another, for necessaries or repairs, arises, as has already been remarked, from an implied agency, deduced from the common interest which ordinarily exists between parties sustaining such relations to each other; but, as in other cases where authority in one person to act for another is implied, is subject to be rebutted, modified and controlled.

In all cases of this sort, we are to understand that the expenses are incurred with the consent of all, or, at least, a majority of the part owners; for neither a single part owner, nor a minority of the part owners have any right to make any such

repairs, or incur any such expenses against the will of the majority; the latter have a complete authority to regulate the whole concerns of the ship.

The general understanding, at the common law, is, if there be no express or implied agreement between the owners, either by their conduct or by their acts sanctioning any such repairs or expenditures, although any one or more of the owners have a right to incur them, yet, they have no remedy over against the others for contribution thereto; but they must themselves, whether they constitute a majority or a minority of the owners, bear the whole charge.

The reason usually given for this doctrine is that no one part owner has a right to control another, against his will, to incur any burthen or expense, even although necessary for the preservation of the common property; but it should be left to his own free choice. Story's Agency, §§ 420, 421, 422, 427.

Chancellor Kent, 3 Com. 155, restricts the authorities of one part owner, to bind another part owner, for repairs, &c., to cases where the one to be rendered liable is absent.

Applying these general principles, thus qualified and limited, to the case at bar, how are the rights and liabilities of the parties to be affected thereby?

The schooner, at the time the repairs were made, was in a home port. She had recently been placed, by the plaintiff, then a part owner with the defendant, under his exclusive charge and management. Acting under this authority from the plaintiff, the defendant had caused her to be repaired, appointed a master, and sent her to sea. Of these facts the plaintiff could not have been ignorant.

In this condition of things, the plaintiff conveyed his interest to Cushing, who, without the consent, and, as the case shows, against the known will of the defendant, proceeds to Boston, and induces the master thus appointed to leave the vessel, and himself assumes control as master, thus taking the schooner out of the control of the defendant, where she had been placed by the plaintiff, and, under these circumstances,

presents himself at Bangor, before the defendant, and desires to know what he shall do with her. The answer is distinct and unqualified — " do nothing."

Here was a distinct denial of authority to Cushing to act for the defendant, in relation to the schooner. He was, therefore, not his agent, in fact, and could not bind him by reason of any express authority to act in his behalf.

Whether the relation which subsisted between these parties, that of part owners, would enable a stranger to recover against the defendant for repairs or necessaries for the use of the schooner, ordered by Cushing, on the ground of implied authority, we do not deem it necessary now to determine. But that the plaintiff cannot recover we think is clear. The jury, it is true, have found that the defendant did not notify the plaintiff before the work was done, that he would not be accountable for the repairs. Nor does the case show that the defendant had any knowledge that repairs were being made by the plaintiff, before they were completed, or before this suit was commenced. And, as we have already seen, the schooner was in a home port; that the plaintiff knew that she had been in the defendant's charge and under his sole control, as ship's husband, until within a few days of the time of making the repairs, that he had repaired her that spring, appointed her a master, and sent her to sea. In addition, there is in the case no evidence that the defendant has had any connection with the schooner, or has in any way participated in her earnings, since Cushing intruded himself into the office of master.

Under such circumstances, the Judge erred when he instructed the jury that if " Cushing was owner of one-half of said schooner, and was master at the time the repairs were ordered, and that the repairs were done by the plaintiff, and were necessary, the defendant would be liable unless the plaintiff had notice, before the repairs were made, that the defendant would not consent to the same." *Hardy* v. *Sprowl*, 31 Maine, 71. It was the duty of the plaintiff, under such circumstances, before attempting to charge the defendant, to have ascertain-

ed whether he desired the repairs to be made, or, at least, to see that he had knowledge that they were to be made.

If the defendant had interposed unreasonable objections to the employment of the vessel, Cushing had an ample remedy by application to a Court in Admiralty, in which case the rights of both parties would have been fully protected.

As the case is presented, it shows a determination on the part of Cushing to control the vessel, regardless of the rights or wishes of the defendant; and there is ground to infer that the plaintiff was not unwilling to aid and assist him in carrying out that determination.

The exceptions are sustained, and, according to the terms of the report, a nonsuit is to be entered.

TENNEY, C. J., HATHAWAY, APPLETON, CUTTING, and GOODE-NOW, J. J., concurred.